

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBI

2002 NOV 21  PM 1: 11

NANCY M.
MAYER-WHITTINGTON
CLERK

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CELGENE CORPORATION,           )
                               )
        Plaintiff,             )        CIVIL ACTION
                               )        CASE NO.: 1:02-CV-2277
vs.                            )
                               )        JUDGE WALTON
JAMES E. ROGAN and             )
ENTREMED, INC.,                )
                               )
        Defendants.            )
_____)

## DEFENDANT ENTREMED, INC.'S MOTION TO DISMISS

Defendant ENTREMED, INC. ("EntreMed"), pursuant to Article III of the United States Constitution and Fed. R. Civ. P. 12(b)(1), (2), (3) and (6), moves to dismiss the claims of Plaintiff Celgene Corporation against Entremed. The basis for EntreMed's motion is set forth more fully in its Memorandum in Support of Motion to Dismiss, filed contemporaneously herewith.

EntreMed respectfully requests that this Court dismiss Celgene's claims against it with prejudice. A proposed order of dismissal is attached as Exhibit A to the Memorandum in Support of this Motion to Dismiss.

ATL_LIB02 97187.1

Dated:  November 21, 2002

Of Counsel:

Anthony B. Askew
Robert E. Richards
Katrina M. Quicker
Kilpatrick Stockton LLP
1100 Peachtree Street - Suite 2800
Atlanta, Georgia  30309-4530

Respectfully Submitted,

Stanley M. Gorinson
D.C. Bar No. 381642
Stephen E. Baskin
D.C. Bar No. 456015
KILPATRICK STOCKTON LLP
607 14th Street, NW - Suite 900
Washington, D.C. 20005-2018

Attorneys for Defendant EntreMed, Inc.

ATLLIB02 97187.1

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2002 NOV 21  PM 1: 12

NANCY M.
MAYER-WHITTINGTON
CLERK



UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CELGENE CORPORATION, )
 )
            Plaintiff, )          CIVIL ACTION
 )          CASE NO.: 1:02-CV-2277
vs. )
 )          JUDGE WALTON
JAMES E. ROGAN and )
ENTREMED, INC., )
 )
            Defendants. )
_____)

## MEMORANDUM IN SUPPORT OF DEFENDANT ENTREMED, INC.'S MOTION TO DISMISS

### I.    INTRODUCTION

Defendant ENTREMED, INC. ("EntreMed"), by counsel, moves that this action be dismissed under Article III of the U.S. Constitution and Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6). A proposed order is attached as Exhibit A to this Memorandum.

Plaintiff Celgene Corporation ("Celgene") filed its Complaint against Defendants Commissioner James E. Rogan of the United States Patent and Trademark Office and EntreMed on November 19, 2002, alleging a cause of action under the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq* and stating that the Court had subject matter jurisdiction to hear this action under 28 U.S.C. § 1331. *See Complaint* ¶4.

In the Complaint, Celgene requested that this Court enjoin Commissioner Rogan from issuing allowed pending patent applications 09/899,344 ('344) and 10/020,391 ('391) and that this Court direct EntreMed to withdraw the '344 and '391 patent applications from issue.

Celgene further requested that this Court enjoin Commissioner Rogan from issuing any patent that claims priority to patent applications '391, '344, 09/704,054, 09/545,139, 08/950,673, 08/468,792, 08/168,817 or 08/025,046, and describes the use of the compound, or a pharmaceutical composition containing the compound known as 3-amino thalidomide.

## II.   ARGUMENT

### A.   Celgene Lacks Standing to Intervene in the Prosecution of the Patent Applications

Celgene is not the applicant of the applications at issue in its Complaint, but a third party. As a third party protester, Celgene fails to satisfy the constitutional requirements of standing. "It is well-established . . . that an individual does not have standing to challenge the decision of the Patent Office to grant a patent to another applicant during the prosecution process. The application process is deemed to be an *ex parte* procedure conducted between the applicant and the Patent Office." *Godtfredsen v. Banner*, 503 F. Supp. 642, 646 (D.C. 1980). Only when an interference is declared by the Commissioner, or a patent infringement action is commenced by the patentee, does the Patent Office procedure become adversarial in nature. *See id.*

### B.   Celgene Lacks Standing to Sue.

As declared by the Supreme Court in *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559-61 (1992), there are three elements that compose the Constitution's Article III "irreducible constitutional minimum of standing" that a plaintiff must satisfy in order to bring suit. *Id.* First, the plaintiff must have suffered an invasion of a legally-protected interest which is concrete and particularized, and is "actual or imminent, not 'conjectural' or

2

'hypothetical'." *Id.*   Second, there must be a causal connection between the injury in fact

and the conduct complained of, i.e., the injury has to be "fairly traceable to the challenged

action of the defendant and not . . . th[e] result [of] the independent action of some third

party not before the court." *Id.*   Third, it must be "likely," as opposed to merely

"speculative," that the injury will be "redressed by a favorable decision." *Id.*

### 1.   Celgene Has Not Suffered an Injury in Fact.

Article III of the Constitution denies federal courts the power to decide questions that

cannot affect the rights of litigants in the case before them.  See *Raines v. Byrd*, 521 U.S.

811, 818-20 (1997).  Consequently, under any articulation of the constitutional standard of

standing, the plaintiff, himself, must have suffered the injury that he seeks to redress.  See *id.*

In the case sub judice, Celgene is seeking to overturn Commissioner Rogan's decision

to issue the '344  and '391 patent applications, asserting that Celgene may be commercially

injured if this Court does not either enjoin Commissioner Rogan from issuing patents for

these applications or issue an injunction requiring the surrender of the subject patent

applications.  Specifically Celgene's complaint states:

> 29.   The conduct of defendants threatens to cause immediate and irreparable
> harm to plaintiff for which it has no adequate remedy at law.  Celgene has
> made substantial investment in testing and ongoing development of a
> promising cancer treatment utilizing the method and chemical composition
> disclosed and claimed in the '471 patent.  EntreMed is a direct competitor of
> Celgene.  Issuance of a patent on the '344 application in its current form
> would effectively nullify plaintiff's legal and economic rights under the '471
> patent and give over to EntreMed the benefits of plaintiff's patented
> inventions.
>
> 30.   Defendants' actions threaten to cause irreparable harm to plaintiff's
> ability to secure the continued support and collaboration of clinical

investigators for further testing of the inventions of plaintiff's '471 patent. Defendant's actions also threaten to cause damage to plaintiff's business, goodwill and relations with investors by impairing plaintiff's ability to develop and market the claimed inventions of its issued '471 patent. These imminently threatened injuries cannot be adequately or accurately quantified in monetary terms.

However, the use of 3-amino thalidomide was previously claimed in U.S. Patent No. 5,712,291 ("the '291 patent") which issued in 1998. In addition, the '291 patent was listed as a cited reference in the Celgene '471 patent. Consequently, Celgene is unable to demonstrate any irreparable harm resulting from the issuance of additional patents concerning the use of 3-amino thalidomide.

Irrespective of Celgene's knowledge of previous patent applications containing 3-amino thalidomide, the "threat of another infringement suit, and the commercial detriment plaintiff allegedly is suffering due to the appearance that [defendant] has valid patent protection are injuries that 'flow . . . from the existence of the patent issued by the PTO," *not* procedural violations by the Commissioner. *Hitachi Metals, Ltd. v. Quigg*, 776 F. Supp. 3, 9 (D.C. 1991). Accordingly, the ultimate source of Celgene's alleged injuries is *not* Commissioner Rogan's purported procedural violation, but the existence of the subject patent applications. Moreover:

> [E]very perceived injury caused by improper agency action does not carry a right to immediate judicial redress. . . . For example, a potential infringer may not sue the PTO seeking retraction of a patent issued to another by reason of its improper allowance by the PTO. *A remedy must await confrontation with the patent owner.*

*Syntex (U.S.A.) Inc. v. U.S. Patent & Trademark Office*, 882 F.2d 1570, 1576 (Fed. Cir. 1989). Based on Celgene's requested relief and the source of Celgene's injuries, Celgene has

4

not alleged a personal injury fairly traceable to Defendants' supposedly unlawful conduct to create constitutionally recognizable standing.

### 2. There Is No Causal Connection Between the Injury and the Conduct.

In order to achieve standing, a plaintiff must have suffered some injury *resulting* from the putatively illegal action of the defendant. See *Valley Forge Christian College v. Americans United for Separation of Church & State,* 454 U.S. 464, 471-74 (1982). Celgene asserts that Commissioner Rogan improperly decided to issue the '344 and '391 patent applications, and as a result, Celgene suffered an injury: harm to plaintiff's ability to secure the continued support and collaboration of clinical investigators for further testing of the inventions and damage to plaintiff's business, goodwill and relations with investors by impairing plaintiff's ability to develop and market the claimed inventions. See *Complaint at* ¶¶ 24, 30.

Celgene's injuries, however, flow from the *existence* of the '344 and '391 patent applications allowance by the PTO, not from Commissioner Rogan's alleged procedural misconduct. And, courts have held that there is no causal connection between the injury and the conduct when the alleged injury originates from the existence of a patent granted by the PTO. *See Hallmark Cards, Inc. v. Lehman*, 959 F. Supp. 539, 544-45 (D.C. 1997) (*citing Hitachi*, 776 F. Supp. at 11; *Syntex,* 882 F.2d at 1576). Therefore, Celgene's alleged injury has not been caused by Commissioner Rogan's allowance of the '344 and '391 patent applications.

5

3.     **It Is Not Likely That the Alleged Injury Will Be Redressed By a Favorable Decision.**

Even if Celgene could satisfy the first two elements of standing, it could not demonstrate that its injury is likely to be redressed if the requested relief is granted. *See Valley Forge,* 454 U.S. at 472-73. If Commissioner Rogan was enjoined from issuing the '344 and '391 patent applications at issue, EntreMed could seek judicial review of that decision pursuant to the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* Moreover, EntreMed has related patents that have already issued. This Court could not, in deciding whether Commissioner Rogan acted inappropriately under the APA, render all of EntreMed's issued patents invalid. More importantly, EntreMed is not the Assignee of the '344 and '391 patent applications--it is the licensee. Nothing in Celgene's requested relief forbids the Assignee of the '344 and '391 patent applications from seeking additional relief should Commissioner Rogan be enjoined. Finally, "'the existence of other remedies to ensure the realization of the . . . objectives' of the patent laws and regulations to be implemented by the PTO confirms . . . determination that PTO decisions on patent grants are not subject to judicial review at the behest of third parties, regardless of whether the challenge is characterized as procedural or substantive." *Hitachi,* 776 F. Supp. at 9-10 (citing *Morris v. Gressette,* 432 U.S. 491, 505-07 (1977)). Accordingly:

> The PTO's adherence to procedural and substantive requirements in its examination process can be checked by third parties, but only in the manner authorized by Congress. Instead of providing third-party protesters with the right to judicial review of examination proceedings, Congress authorized them to raise allegations of patent invalidity as a defense to an infringement action. . . . [Celgene] also is authorized to bring a declaratory judgment action against [EntreMed], should [EntreMed] subject [Celgene] to threats of an

> infringement suit. In light of the remedies capable of redressing [Celgene's] potentially substantive injuries and the overall statutory scheme governing patent examination and issuance . . ., [Celgene's] cause of action is precluded by the Patent Statute.

*Hitachi,* 776 F. Supp. at 9-10. Therefore, Celgene's alleged injuries are not redressible by this Court. Celgene lacks the necessary standing to bring the subject action.

### C.   The Issue Is Not Ripe for Adjudication.

The Supreme Court has explained that premature review of decisions should be avoided to prevent the courts:

> from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effect felt in a concrete way by the challenging parties.

*Abbott Labs. v. Gardner,* 387 U.S. 136, 148-149 (1967). Generally, a claim is not ripe for judicial review if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 581 (1985) (quoting 13A C. Wright, A. Miller, & E. Cooper, FED. PRACTICE & PROC. § 3532, p. 112 (1984)). In determining whether an agency's decision is, or is not, ripe for judicial review, a court must consider whether the agency action involved is a final agency action within the meaning of the Administrative Procedure Act. See *Ash Creek Min. Co. v. Lujan,* 934 F.2d 240 (10th Cir. 1991); *Abbott,* 387 U.S. at 149.

Celgene's issues are not suitable for review because Commissioner Rogan's decision is not yet final. See FED. PRACTICE & PROC. at § 3532.6. To date, the '344 and '391 patent applications have not issued. According to the Federal Circuit in *Blacklight Power, Inc. v.*

*Rogan*, 295 F.3d 1269, 1273-74 (Fed. Cir. 2002), the Patent and Trademark Office may withdraw a patent application from issue even after the issue fee has been paid. And it is clear that the patent statutes do not contemplate judicial review of interlocutory determinations. *See Godtfredsen*, 503 F. Supp. at 644. Celgene's fear--that a patent might issue as a consequence of an *ex parte* process in which it has no opportunity to mount a challenge--does not represent an issue to be reviewed by the Court, but is an inherent consequence of the patent system. *See id.* at 646. "It may well be that this process does work a hardship on persons with competing claims (although they do have an ultimate remedy by way of an infringement action, delayed and expensive though it may be)." *Id.* Because the issue of the '344 and '391 patent applications has not yet occurred, Commissioner Rogan's decision to issue the '344 and '391 patent applications is not ripe for adjudication.

### D.     This Court Lacks Subject Matter Jurisdiction.

Federal Rule of Civil Procedure 12(b)(1) provides that a party may raise the defense of "lack of jurisdiction over the subject matter" in a motion before answering the complaint filed in any action. The federal district courts have always been courts of limited jurisdiction. *See* U.S. Const., Art. III, § 1. "Federal courts are not courts of general jurisdiction and have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541, *reh'g denied,* 476 U.S. 1132 (1986). The lack of subject matter

8

jurisdiction may not be ignored by the courts. *Pennsylvania v. Union Gas Co.*, 491 U.S. 1, 25 (1989).

Celgene asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. *See Complaint* ¶ 4. In particular, Celgene alleges this Court has jurisdiction to review Commissioner Rogan's decision to issue the '344 patent application under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq. See id.* As expressed by the District Court for the District of Columbia in *Hitachi,* the Court lacks subject matter jurisdiction over third party protestor claims "because the comprehensive scheme Congress established to govern patent grants reveals Congress' intent to preclude judicial review of PTO examination decisions at the behest of third parties protesting the issue or reissue of a patent." *Hitachi*, 776 F. Supp. at 7. The APA authorizes those "suffering legal wrong, because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute" to obtain judicial review of agency actions. However, the APA is inapplicable when a statute "preclude[s] judicial review." *Id.* Furthermore:

> [W]hen a statute provides a detailed mechanism for judicial consideration of particular issues at the behest of particular persons, judicial review of those issues at the behest of other persons may be found to be impliedly precluded. The Patent Statute is addressed to patent owners and patent applicants. The patent examination process is an *ex parte* proceeding, not an adversarial one, and the Patent Statute's judicial review provisions contain no gaps requiring the Court to exercise its power. The Patent Statute explicitly authorizes patent owners to apply for reissue of a patent, and confers on those applicants the right to seek administrative and judicial review of PTO examination decisions. In contrast, Title 35 contains no provision expressly authorizing administrative or judicial review of a PTO decision at the behest of a third-party protestor.

9

> Aware that the Patent Statute implicated third-party interests, Congress provided only for administrative and judicial review of reissue decisions at the behest of reissue applicants. Consequently, "[t]o infer that Congress intended, nevertheless, to grant third part[ies] . . . a right to judicial review" of PTO reissue decisions would be inconsistent with the administrative scheme designed to implement U.S. patent law and "wholly unwarranted."
>
> Consequently, the Court lacks subject matter jurisdiction to consider plaintiff's suit with respect to the defendant Commissioner or the intervenor.

*Id.* at 8-10. Although the '344 and '391 patent applications are not reissue applications, the rationale would be the same.   Celgene maintains this suit in an effort to overturn Commissioner Rogan's decision to issue the '344 and '391 patent applications. Such a suit is precluded by the Patent Statute, and therefore, this Court lacks subject matter jurisdiction to adjudicate.

### E.    **This Court Lacks Personal Jurisdiction Over EntreMed.**

A particular defendant may be dismissed from a lawsuit pursuant to Rule 12(b)(2) if that defendant or the dispute concerning that defendant lacks sufficient contacts with the forum for the court to exercise personal jurisdiction over the defendant. "When personal jurisdiction is challenged, the plaintiff has the burden to show jurisdiction exists." *Burlington Indus. v. Maples Indus.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (citation omitted); *see Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Thus, "[t]here must . . . be some *evidence* upon which a prima facie showing of jurisdiction may be found." *Aaron Ferer & Sons v. Diversified Metals*, 564 F.2d 1211, 1215 (8th Cir. 1977) (emphasis added).

10

Due Process requirements allow exercise of personal jurisdiction only if two elements are satisfied. First, the defendant must have established "minimum contacts" with the forum state "such that [defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980). Where minimum contacts exist, they "may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 320 (1945)).

Minimum contacts may be shown in two ways. First, a defendant who has "continuous and systematic" connections with a forum state may be subject to jurisdiction in that state, even for causes of actions that have no specific relationship to those connections. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1359 (Fed. Cir. 1998) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 (1984)). Jurisdiction in such a case is typically referred to as "general jurisdiction." *Id.* When the cause of action actually arises out of the defendant's specific connections to a forum state, even contacts that are "isolated and sporadic" can support jurisdiction. *Id.* (quoting *Burger King,* 471 U.S. at 472-73). Jurisdiction based on the specific connections is typically referred to as "specific jurisdiction." *Id.*

The claims against EntreMed must be dismissed because neither type of jurisdiction exists in this case. The Complaint does not specifically assert that personal jurisdiction exists regarding EntreMed or Commissioner Rogan and there are simply no bases for finding

11

any contacts between EntreMed and the District of Columbia. In addition, given EntreMed's nonexistent connections with this forum, exercising personal jurisdiction would violate the fairness requirements of Due Process.

**1.   General Jurisdiction Regarding EntreMed Is Lacking Because EntreMed's Nonexistent Contacts With the District of Columbia Are Far From "Continuous and Systematic."**

To show general jurisdiction regarding a defendant, a plaintiff must show that a defendant has had "continuous and systematic" contacts with a forum state. *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1359 (Fed. Cir. 1998). In an apparent effort to make such a showing, Celgene asserts that EntreMed filed documents with the U.S. Patent and Trademark Office. *See Complaint* ¶ 9. ("defendant EntreMed caused a paper to be filed with the Patent Office"). However, the U.S. Patent and Trademark Office resides in the Commonwealth of Virginia, not the District of Columbia. Far from having "continuous and systematic" contacts with the District of Columbia, EntreMed has no ties to the District of Columbia whatsoever. There is no basis for finding general jurisdiction in this case.

**2.   There Are Insufficient Contacts to Create Specific Jurisdiction Regarding EntreMed.**

The Federal Circuit has established a three prong test that must be satisfied to create specific jurisdiction in a patent infringement case. The elements of the test are:

> (1) whether the defendant purposefully directed its activities at the residents of the forum; (2) whether the claim arises out of or is related to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair.

*HollyAnne Corp. v. TFT. Inc.*, 199 F.3d 1304, 1307 (Fed. Cir. 1999) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995)). Celgene cannot satisfy the first and second

prong of this test because EntreMed has not had the necessary contact with the District of Columbia.

Celgene cannot demonstrate that its claims against EntreMed are based upon any acts that were directed toward the District of Columbia or its residents.  The only conduct by EntreMed that Celgene could possibly assert as a contact by EntreMed with the District of Columbia is the filings by EntreMed in the U.S. Patent and Trademark Office.  However, the U.S. Patent and Trademark Office is not located in the District of Columbia, but in Alexandria, Virginia.  There are therefore no grounds for personal jurisdiction in the District of Columbia for EntreMed.

### 3. Exercise of Personal Jurisdiction Would Be Unfair and Unreasonable.

As discussed above, both the Supreme Court cases regarding personal jurisdiction and the third prong of the Federal Circuit's test call for an examination of the fundamental fairness of exercising personal jurisdiction over a defendant even when minimum contacts are found to exist.  This analysis requires balancing of five factors enumerated in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).  *See also Asahi Metal Indus. v. Superior Ct. of California, Solano Cty.*, 480 U.S. 102, 111 (1987) (enumerating five factors from *Woodson*).  In this case, a balancing of these factors shows that personal jurisdiction regarding EntreMed would be fundamentally unfair.

The first factor to be balanced,  burden on the defendant, (*Woodson,* 444 U.S. at 292), weighs strongly against exercise of jurisdiction.  EntreMed, a Delaware entity located in Maryland, which has not done business in the District of Columbia, would be faced with the

burden of defending a suit in the District of Columbia even though the relevant offices, personnel, and documents are all located in Rockville, Maryland. The suit would be based entirely upon actions that did not occur in the forum state.

The second factor, the District of Columbia's interest in adjudicating the dispute, is virtually nonexistent in this case. *Woodson* drew this factor from a discussion in a case that upheld jurisdiction against an out of state insurer by relying in part on a state's interest in "providing effective means of redress for its residents when their insurers refuse to pay claims." *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957); *see also Woodson* 444 U.S. at 292 (citing *McGee*). No such state interests exist here. Patent claims are based entirely on federal statute and are thus enforced by federal, not state courts. The District of Columbia has no interest in assuring that federal statutory claims brought by Celgene, which is based in New Jersey, and incorporated in Delaware concerning activities occurring outside of the District of Columbia are adjudicated by federal courts within the District of Columbia.

The third factor under *Woodson* is "the plaintiff's interest in obtaining convenient and effective relief, . . . *at least when that interest is not adequately protected by the plaintiff's power to choose the forum.*" *Woodson*, 444 U.S. at 292 (emphasis added). This factor does not weigh in favor of jurisdiction in this case. The Court drew that factor from a footnote in an earlier case expressing concern regarding the possibility that in some cases it may not be possible to locate a forum with sufficient contacts to confer jurisdiction. *Id.* (citing *Shaffer v. Heitner*, 433 U.S. 186, 211 n.37 (1977)). In this case, Celgene is located in New Jersey and nothing would prevent Celgene from filing its claims against EntreMed in Maryland.

The fourth factor, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," (*Woodson,* 444 U.S. at 292), demonstrates perhaps most clearly why an exercise of jurisdiction would be unfair in this case. Trying the claims against EntreMed in the District of Columbia would be extremely inefficient because all of the critical evidence is found in Rockville, Maryland.

The final *Woodson* factor, "the shared interest of the several States in furthering fundamental substantive social policies," (*Woodson,* 444 U.S. at 292), is drawn from a discussion in *Kulko v. Superior Court of Cal.*, 436 U.S. 84, 93 (1978), in which the Supreme Court pointed to the existence of alternate interstate remedies available to the plaintiff in a divorce action as a factor weighing against jurisdiction. Similar reasoning weighs against jurisdiction in this case. Again, Celgene in this case is seeking to enforce a *federal* statutory right and may pursue its claims against EntreMed in Maryland. As in *Kulko*, the existence of a uniform procedural system allowing enforcement in other jurisdictions weighs against exercising jurisdiction over EntreMed in this district. If anything, this factor weighs even more strongly against jurisdiction in this case than in *Kulko* because the rights are federal and need not be tied to the courts within any specific state.

In sum, the first, fourth, and fifth factors weigh strongly against the fairness of exercising jurisdiction. The second factor is not relevant in this case since federal rights are involved. With respect to the third factor, Celgene may have an interest in selecting a forum, but that interest is attenuated in this case because adequate relief is available in another state and because the most important evidence regarding the patent applications is located outside

of the District of Columbia.  Accordingly, exercise of jurisdiction would be unfair even if

minimum contacts did exist in this case.

**F.      Venue Is Improper in This District.**

Because personal jurisdiction is lacking in this case, venue is also improper.  Venue

over EntreMed is governed by 28 U.S.C. §1331(b) *et seq.*, which provides:

> A civil action wherein jurisdiction is not founded solely on diversity of
> citizenship may, except as otherwise provided by law, be brought only in
> (1) a judicial district where any defendant resides, if all defendants reside in
> the same State,
> (2) a judicial district in which a substantial part of the events or omissions
> giving rise to the claim occurred, or a substantial part of property that is the
> subject of the action is situated, or
> (3) a judicial district in which any defendant may be found, if there is no
> district in which the action may otherwise be brought.

**1.      Section 1331(b)(1) Venue.**

The question of where a corporate defendant "resides" under this statute is controlled

by 28 U.S.C. § 1391(c) (1994).  *See Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d

1408, 1410 (Fed. Cir. 1996).  That statute provides that a corporate defendant is "deemed to

reside in any judicial district in which it is subject to personal jurisdiction at the time the

action is commenced."  Accordingly, venue is deemed proper for claims against a corporate

defendant only if personal jurisdiction exists regarding that defendant.  As explained in

Section E above, EntreMed has no contacts with the District of Columbia, so personal

jurisdiction regarding EntreMed is lacking.  Venue is therefore improper under 28 U.S.C.

§1331(b)(1).

16

Celgene has additionally named James E. Rogan, Under Secretary for Commerce for Intellectual Property and Director of the United States Patent and Trademark Office, in his official capacity. *See Complaint* ¶2. Civil actions involving a federal agency are governed by 28 U.S.C. §1331(e) *et seq.* which states:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which
> (1) a defendant in the action resides,
> (2) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
> (3) the plaintiff resides if no real property is involved in the action. Additional persons may be joined as parties to any such action in accordance with the Federal Rules of Civil Procedure and with such other venue requirements as would be applicable if the United States or one of its officers, employees, or agencies were not a party.
>
> The summons and complaint in such an action shall be served as provided by the Federal Rules of Civil Procedure except that the delivery of the summons and complaint to the officer or agency as required by the rules may be made by certified mail beyond the territorial limits of the district in which the action is brought.

Pursuant to 35 U.S.C. §1(b), Commissioner Rogan resides in the Eastern District of Virginia. Specifically, §1(b) provides, "[t]he United States Patent and Trademark Office shall be deemed, for purposes of venue in civil actions, to be a resident of the district in which its principal office is located, except where jurisdiction is otherwise provided by law." Because the offices of the U.S. Patent and Trademark Office are located in Arlington, Virginia, venue is appropriate in the Eastern District of Virginia and not in the District of Columbia.

### 2.    Section 1331(b)(2) Venue.

Under 28 U.S.C. §1331(b)(2), venue is proper in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. The Complaint alleges injury arising from the potential issuance of U.S. Patent Application Nos. 09/899,344 and 10/020,391. *See Complaint* ¶¶ 28, 54. A notice of allowance would be issued by the U.S. Patent and Trademark Office in Alexandria, Virginia. EntreMed's principle place of business and all of its records, including the records relating to these two patent applications, are in Rockville, Maryland. A substantial part of the events or omissions giving rise to Celgene's claims occurred in Arlington, Virginia where all of the U.S. Patent and Trademark Office's Examiners are located. Thus, the events giving rise to the claim are not located in the District of Columbia. Venue is therefore improper under 28 U.S.C. §1331(b)(2).

### 3.    Section 1331(b)(3) Venue.

Under 28 U.S.C. §1331(b)(3), venue is proper in any judicial district in which a defendant may be found if no other district is available. In this instance, venue would be proper in Maryland, where EntreMed is located, or in Delaware, where EntreMed is incorporated. There are therefore alternative venues available and 28 U.S.C. §1331(b)(3) does not apply.

### G.    Celgene Has Failed to State a Claim Upon Which Relief May Be Granted.

A motion to dismiss is the proper method of testing the legal sufficiency of a complaint. *See* FED. R. CIV. P. 12(b)(6); *Skokomish Indian Tribe v. France*, 269 F.2d 555, 557 n.2 (9th Cir. 1959). For the purpose of a motion to dismiss for failure to state a claim, the

courts generally accept as true the facts alleged in a complaint and construe them in a light most favorable to the plaintiff. *See E.G. Quality Foods de Centro Am., S.A. v. Latin American Agribusiness Development Corp.*, 711 F.2d 989, 994-995 (11ᵗʰ Cir. 1983).

A court may dismiss a complaint under Rule 12(b)(6) if, after accepting the material facts alleged in the complaint as true, it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle the plaintiff to relief. *Giuliano v. Everything Yogurt, Inc.*, 819 F. Supp. 240 (E.D.N.Y. 1993) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 L. Ed.2d 80 (1957)).

The Complaint alleges that Celgene's cause of action arises under the laws of the Administrative Procedure Act, 5 U.S.C. §§ 551 *et seq. See Complaint* ¶4. Under the APA, a person "adversely affected or aggrieved by agency action," including a "fail[ure] to act," is entitled to "judicial review thereof." 5 U.S.C. § 502 (1994). According to § 704:

> Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.

*Id.* In *FTC v. Standard Oil Co. of CA,* 449 U.S. 232 (1980), the Supreme Court provided guidance for determining whether an agency action is final. Factors to be considered are: (1) whether the action is a definitive statement of the agency's position; (2) whether the action had the status of law and immediate compliance with its terms was expected; (3) whether the action has a direct impact on the day-to-day business of the plaintiff; and (4) whether the preenforcement challenge was calculated to speed enforcement and prevent piecemeal litigation. See *id.*

19

As discussed in *Blacklight,* the complexity of the patent examination process and the potential for error weigh on the side of affording great flexibility to the PTO to withdraw an application from issue, even after the issue fee has been paid. *See Blacklight,* 295 F.3d at 1273-74. Because the Commissioner may still withdraw the '344 and '391 patent applications from issue, the agency action is not final. The decision to issue is not a definitive statement precisely because it does not have the status of law (it does not give the applicant of the subject applications the right to enforce a patent) and immediate compliance cannot reasonably be expected. Based on the foregoing, Commissioner Rogan's decision to issue the subject patent applications is not a final agency action warranting judicial review.

### H.    Conclusion.

Based on the foregoing, EntreMed respectfully requests that its motion to dismiss should be granted and Celgene's complaint should be dismissed with prejudice.

Dated: November 21, 2002                              Respectfully submitted,

Of Counsel:

Anthony B. Askew                                          Stanley M. Gorinson
Robert E. Richards                                         D.C. Bar No. 381642
Katrina M. Quicker                                        Stephen E. Baskin
Kilpatrick Stockton LLP                                 D.C. Bar No. 456015
1100 Peachtree Street - Suite 2800                KILPATRICK STOCKTON LLP
Atlanta, Georgia  30309-4530                       607 14th Street, NW - Suite 900
                                                                   Washington, D.C. 20005-2018

                                                                   Attorneys for Defendant EntreMed, Inc.

20

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CELGENE CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | CASE NO.: 1:02-CV-2277 |
| vs. | ) | |
| | ) | |
| JAMES E. ROGAN and | ) | JUDGE WALTON |
| ENTREMED, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I certify that I have this day served the parties in this action with **EntreMed, Inc.'s**

**Motion to Dismiss** and **Memorandum in Support of Defendant EntreMed, Inc.'s Motion**

**to Dismiss** by hand, addressed as follows:

PENNIE & EDMONDS
Carl P. Bretscher
Max Bachrach
1667 K Street, N.W., Suite 1000
Washington, D.C.  20006

James E. Rogan
Under Secretary of Commerce for
Intellectual Property and Director of the
United States Patent and Trademark Office
2121 Crystal Drive, Crystal Park 2, #906
Arlington, Virginia 22202

This 21st day of November, 2002.

_____
Attorneys for EntreMed, Inc.