## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CELGENE CORPORATION,<br><br>      Plaintiff,<br><br>     v.<br><br>JAMES E. ROGAN and<br>ENTREMED, INC.,<br><br>      Defendants. | ) <br> ) <br> ) <br> ) <br> )   **Case Number: 1:02CV02277 (RBW)** <br> ) <br> )   **Judge Reggie B. Walton** <br> ) <br> ) <br> ) |

## MEMORANDUM IN OPPOSITION TO
## DEFENDANT ENTREMED, INC.'S MOTION TO DISMISS

Pennie & Edmonds LLP
1667 K Street, N.W., Suite 1000
Washington, D.C. 2006
(202) 496-4400

Attorneys for Plaintiff
Celgene Corporation

James W. Dabney
Stephen S. Rabinowitz
Carl P. Bretscher (#463985)
Max Bachrach (#477267)

 Of Counsel

December 2, 2002

# TABLE OF CONTENTS

**Page(s)**

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.    THE COURT HAS SUBJECT MATTER JURISDICTION TO HEAR
      THIS ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

II.   THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT
      ENTREMED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

III.  VENUE IS PROPER IN THIS DISTRICT . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.   THE COMPLAINT STATES AN ACTIONABLE CLAIM
      ARISING UNDER 5 U.S.C. § 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      A.    Defendant Rogan's Decision
            Constitutes Final Agency Action . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      B.    Review of Defendant Rogan's Decision
            Is Not Precluded by Statute . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

NY2 - 1375224.1

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Abbott Labs. v. Gardner,
    387 U.S. 136 (1967) ........................................................................ 21

Aetna Life Ins. Co. v. Haworth,
    300 U.S. 227 (1937) .......................................................................... 9

Animal Legal Defense Fund, Inc. v. Glickman,
    154 F.3d 426 (D.C. Cir. 1998) ...................................................... 17

Arizona v. Shalala,
    121 F. Supp. 2d 40 (D.D.C. 2000) ............................................... 20

Association of Data Processing Service Orgs., Inc. v. Camp,
    397 U.S. 150, 154 (1970) ......................................................... 16, 17

Bennett v. Spear,
    520 U.S. 154 (1997) .............................................................. 8, 19, 20

Bristol-Myers Squibb Co. v. Shalala,
    91 F.3d 1493 (D.C. Cir. 1996) ............................................ 7, 11, 17

Budinich v. Becton Dickinson & Co.,
    486 U.S. 196 (1988) ..................................................................... 20

Cobell v. Babbitt,
    30 F. Supp. 2d 24 (D.D.C. 1998) ................................................ 20

Conley v. Gibson,
    355 U.S. 41 (1957) ......................................................................... 7

FAIC Securities, Inc. v. United States,
    768 F.2d 352 (D.C. Cir. 1985) ..................................................... 17

FTC v. Standard Oil Co. of Cal.,
    449 U.S. 232 (1980) ..................................................................... 20

NY2 - 1375224.1

GTE New Media Servs., Inc. v. Ameritech Corp.,
    21 F. Supp. 2d 27 (D.D.C. 1998) ........................................................................ 14

Gladstone, Realtors v. Village of Bellwood,
    441 U.S. 91 (1979) ................................................................................... 7, 10

Godtfredson v. Banner,
    503 F. Supp. 642 (D.D.C. 1991) ...................................................................... 15

Hallmark Cards, Inc. v. Lehman,
    959 F. Supp. 539 (D.D.C. 1997) ................................................................. 12, 15

Hishon v. King & Spalding,
    467 U.S. 69 (1984) ....................................................................... 1, 7, 12, 18

Hitachi Metals, Ltd. v. Quigg,
    776 F. Supp. 3 (D.D.C. 1991) ......................................................... 12, 13, 15, 21

Jenkins v. McKeithen,
    395 U.S. 411 (1969) ..................................................................... 1, 7, 12, 18

MD Pharm., Inc. v. Drug Enforcement Admin.,
    133 F.3d 8 (D.C. Cir. 1998) ...................................................................... 11, 17

\*  Monsanto Co. v. Kamp,
    360 F.2d  499 (D.C. Cir. 1965) ................................................. 3, 4, 5, 6, 10, 16, 20, 21, 22

Nestor v. Hershey,
    425 F.2d 504 (D.C. Cir. 1969) ........................................................................ 15

Oconus DOD Employee Rotation Action Group v. Cohen,
    140 F. Supp. 2d 37 (D.D.C. 2001) ................................................................... 18

Ohio Forestry Ass'n v. Sierra Club,
    523 U.S. 726 (1998) .................................................................................. 18

Sabella v. United States,
    863 F. Supp. 1 (D.D.C. 1994) ........................................................................ 19

Sierra Club v. Morton,
    405 U.S. 727 (1972) .................................................................................. 16

NY2 - 1375224.1

Simon v. Eastern Ky. Welfare Rights Org.,
    426 U.S. 26 (1976) .......................................................................... 11

Standard Havens, Inc. v. Manbeck,
    762 F. Supp. 1349 (W.D. Mo. 1991) ............................................... 15

Syntex (USA) Inc. v. United States Patent & Trademark Office,
    882 F.2d 1570 (Fed. Cir. 1989) ....................................................... 12

Texas v. United States,
    523 U.S. 296 (1998) ........................................................................ 18

Thomas v. Union Carbide Agricultural Prods. Co.,
    473 U.S. 568 (1985) ................................................................. 10, 19

United States v. SCRAP,
    412 U.S. 669 (1973) ........................................................................ 16

VE Holding Corp. v. Johnson Gas Appliance Co.,
    917 F.2d 1574 (Fed. Cir. 1990) ....................................................... 14

Williams v. United States, No. C-01-0024
    2001 WL 1352885 (N.D. Cal. Oct 23, 2001) ................................. 14

**STATUTES**

5 U.S.C. § 701(a)(1) ............................................................................. 5, 21

5 U.S.C. § 702 ......................................................................... 3, 5, 16, 17

5 U.S.C. § 704 ................................................................................... 5, 17

15 U.S.C. § 2 ............................................................................................ 6

28 U.S.C. § 1391 ............................................................................ 5, 14, 15

35 U.S.C. § 145 ..................................................................................... 15

35 U.S.C. § 146 ................................................................................. 5, 15

35 U.S.C. §151 ...................................................................................... 20

\* 35 U.S.C. § 291 ..................................................................... 5, 11, 15, 22

NY2 - 1375224.1

## RULES

37 C.F.R. § 1.1(a) ........................................................................................................ 4, 15

37 C.F.R. §1.313(b) ........................................................................................................ 18

Fed. R. Civ. P. 4(k)(1)(B) ............................................................................................ 4, 13, 14

Fed. R. Civ. P. 13(a) ........................................................................................................ 6

Fed. R. Civ. P. 19(a)(2) ................................................................................................ 4, 14

NY2 - 1375224.1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CELGENE CORPORATION, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case Number: 1:02CV02277 (RBW) |
| JAMES E. ROGAN and ENTREMED, INC., | ) ) Judge Reggie B. Walton ) |
| Defendants. | ) ) ) |

## MEMORANDUM IN OPPOSITION TO
## DEFENDANT ENTREMED, INC.'S MOTION TO DISMISS

Celgene Corporation ("Celgene") respectfully submits this memorandum in opposition to the motion of defendant EntreMed, Inc. ("EntreMed") for an Order dismissing this action as to EntreMed. The motion is without merit and should be denied.

Celgene is the owner of U.S. Patent No. 6,316,471 entitled "Indolines, Method of Use, and Pharmaceutical Compositions" (the "'471 Patent"; see Complaint ¶ 5 & Ex. A).[1] The '471 Patent contains a grant to Celgene of the right to exclude others, including EntreMed, from making, using, or selling certain cancer-treatment products (Complaint ¶ 32) or practicing a method of treating cancer comprising use of 4-(amino)-2-(2,6-dioxo(3-piperidyl))-isoindoline-

---

[1]     For purposes of ruling on EntreMed's motion to dismiss, the Court must assume that all of Celgene's factual allegations are true. E.g., Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

NY2 - 1375224.1

1,3-dione, commonly known as ACTIMID™, whose structural formula is set forth below (Complaint ¶¶ 6-7):

Defendant EntreMed is a direct competitor of Celgene (Complaint ¶ 29).  In October and December 2001, EntreMed filed papers with the United States Patent and Trademark Office (the "Patent Office") claiming that EntreMed's assignor or licensor had purportedly invented certain cancer-treatment products (Complaint ¶¶ 33-39 & Exs. D-E) and a method of treating cancer comprising use of a compound identified by the formula set forth below (Complaint ¶¶ 8-14 & Exs. B-C):

By making the claims described above, defendant EntreMed sought to appropriate and patent cancer treatment products and methods (a) which were not invented by EntreMed's alleged assignor or licensor, (b) which were not disclosed in applications filed by EntreMed's alleged assignor, and (c) which were, in fact, invented by Celgene's assignor and published in a

-2-

predecessor to the application which became the '471 Patent (Complaint ¶¶ 26, 52).   The "prior art" of record in the '471 Patent includes a published specification identical to those of the EntreMed applications annexed to the Complaint herein (Complaint ¶ 5 & Ex. A, citing to U.S. Patent No. 5,712,291 to D'Amato and assigned or exclusively licensed to EntreMed [hereinafter, the "EntreMed '291 Patent"]).   In issuing the '471 Patent to Celgene, the Patent Office ruled that the claimed inventions of the '471 Patent were patentably distinct from anything disclosed in the EntreMed '291 Patent (Complaint ¶¶ 27, 53).

Notwithstanding Celgene's having been awarded the '471 Patent; and notwithstanding the continued subsistence and presumed validity of the '471 Patent, the Patent Office on October 21 and November 6, 2002, "allowed" claims made by EntreMed to patent protection for inventions identical to inventions on which the Patent Office previously awarded the '471 Patent to Celgene (Complaint ¶¶ 23, 49).   As a result of this agency action by defendant James E. Rogan, the Under Secretary of Commerce for Intellectual Property and Director of the Patent Office ("Rogan"):

> defendant Rogan threatens imminently to issue a United States patent purporting to grant defendant EntreMed or its assignor a purported legal right to exclude plaintiff from using its own patented method for the treatment of oncogenic or cancerous conditions or selling products for carrying out that patented method. . . . Issuance of a patent on the '344 application in its current form would effectively nullify plaintiff's legal and economic rights under the '471 patent and give over to EntreMed the benefits of plaintiff's patented inventions (Complaint ¶¶ 28, 29).

Celgene commenced this action on November 19, 2002.   Celgene seeks judicial review, under 5 U.S.C. § 702, of defendant Rogan's announced intent to issue a duplicative – or in patent parlance, an "interfering" -- patent to EntreMed or its assignor, in direct contravention of Celgene's rights under the '471 Patent and applicable law.   Cf. Monsanto Co. v. Kamp, 360 F.2d

NY2 - 1375224.1

499, 501-02 (D.C. Cir. 1965) (reversing denial of preliminary injunction against issuance of "interfering" patent). EntreMed was joined as a defendant under Fed. R. Civ. P. 19(a)(2) and was served with process at its headquarters in Rockville, Maryland (Complaint ¶ 3) pursuant to Fed. R. Civ. P. 4(k)(1)(B) which provides in part:

> Service of a summons . . . is effective to establish jurisdiction over the person of a defendant . . . who is a party joined under . . . Rule 19 and is served at a place within a judicial district of the United States and not more than 100 miles from the place from which the summons issues.

On November 21, 2002, defendant EntreMed filed the within motion to dismiss pursuant to "Article III of the U. S. Constitution and Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6)."[2] According to EntreMed, Celgene supposedly lacks any stake in the outcome of this action sufficient to confer "standing" to sue (EntreMed Mem. at 2-7), with the purported result that the Court supposedly lacks subject matter jurisdiction to determine the merits of whether defendant Rogan threatens imminently to nullify Celgene's legal and economic rights under an issued United States patent. Contra, Monsanto, 360 F.2d at 501-02 (reversing denial of preliminary injunction against issuance of "interfering" patent).

EntreMed next asserts that the Court supposedly lacks personal jurisdiction over EntreMed (EntreMed Mem. at 10-16). The contention is insupportable in view of Fed. R. Civ. P. 4(k)(1)(B). EntreMed's motion does not cite to Fed. R. Civ. P. 4(k)(1)(B).

EntreMed next asserts that venue of this action is improper (EntreMed Mem. at 16-18) on the purported ground that the Patent Office – whose official address for correspondence is "Washington, D.C. 20231"; see 37 C.F.R. § 1.1(a) – supposedly does not "reside" in the District

---

[2]    Memorandum in Support of Defendant EntreMed, Inc.'s Motion to Dismiss dated November 21, 2002 [hereinafter, "EntreMed Mem."] at 1.

NY2 - 1375224.1

of Columbia for purposes of 28 U.S.C. § 1391(e).  EntreMed also apparently contends that notwithstanding its filing of allegedly false claims with the Patent Office at "Washington, D.C. 20231", no "substantial" part of the events giving rise to this action occurred in this district.  But cf. 35 U.S.C. §§ 146, 291 (party in interest may have relief against interfering application or patent in the District of Columbia where rival claimants reside in a plurality of districts not embraced within the same state).

Finally, EntreMed asserts that even if subject matter jurisdiction, personal jurisdiction, and venue are all present and proper, Celgene's complaint supposedly fails to state any claim upon which relief can be granted under 5 U.S.C. § 702 (EntreMed Mem. at 7-8, 18-20). Although not entirely clear, EntreMed's motion appears to argue that (a) the challenged actions of Rogan do not constitute "final agency action[s]," 5 U.S.C. § 704, because Rogan could theoretically sua sponte reverse himself on some unidentified grounds; and (b) at all events, some unidentified "statutes" supposedly "preclude judicial review" in this case.  5 U.S.C. § 701(a)(1). EntreMed's arguments are substantially the same as those which the D.C. Circuit rejected in Monsanto, 360 F.2d at 501-02:

> If the Commissioner issues a patent to a new applicant even though there is a patent outstanding on the same subject matter, obviously two patents would be outstanding at the same time on the same subject matter.  This is a contradiction to the whole thesis of patent issuance.  Indeed the constitutional grant of power to the Federal Government is couched in terms of exclusivity.  Of course a duplication of a patent grant may upon occasion occur by accident, but it cannot be a valid feature of a governmental program. . . .
>
> We therefore hold that, since the Commissioner of Patents has issued a patent valid on its face, he is not free to take action adverse to the validity of that patent while its validity is being litigated in the United States courts.

NY2 - 1375224.1

The holding and reasoning of the D.C. Circuit in Monsanto are directly applicable to the present case; for on the same day that it filed the within motion to dismiss, EntreMed commenced an action in the United States District Court for the District of Maryland entitled EntreMed, Inc. v. Celgene Corp., No. 8:02-CV-3787 (the "Maryland Action"). Copies of EntreMed's complaint in the Maryland Action, and Celgene's Answer and Counterclaim in the Maryland Action, are being filed simultaneously with this memorandum (see the accompanying Declaration of Carl P. Bretscher, Esq., sworn to December 2, 2002 [hereinafter "Bretscher Decl."] ¶¶ 2-3 & Exs. 1-2).

EntreMed's complaint in the Maryland Action alleges that the Patent Office supposedly erred in issuing the '471 Patent to Celgene in view of the EntreMed '291 Patent (Bretscher Decl. ¶ 2 & Ex. 1 at ¶ 67) and prays for a judgment invalidating the '471 Patent (id. at WHEREFORE ¶¶ f, j). EntreMed further alleges in the Maryland Action that Celgene's commencement of the present action constituted a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 (id. at ¶¶ 14-18). On their face, the claims purportedly stated in EntreMed's complaint in the Maryland Action arise out of transactions and occurrences that are the subject matter of the present action, and constitute compulsory counterclaims in the present action under Fed. R. Civ. P. 13(a) (see id. ¶ 3 & Ex. 2 at pp. 1-4 & ¶¶ 89-90).

EntreMed's commencement of the Maryland Action, EntreMed's failure to inform this Court of the existence of the Maryland Action, and EntreMed's failure to mention the Maryland Action in a written request filed November 27, 2002, for expedited hearing of the within motion,[3]

---

[3]     See Defendant EntreMed, Inc.'s Request for Expedited Hearing on EntreMed's Pending Motion to Dismiss and Motion to File Said Document Under Seal filed November 27, 2002.

NY2 - 1375224.1

are behaviors consistent with those of a litigant (a) who is engaged in forum shopping, (b) who for some reason does not want Judge Walton, as distinct from Judge Chasanow, to determine the merits of the inventorship issues raised by this action, (c) who seeks to procure a dismissal of the present action on grounds that are basically inconsistent with premises of EntreMed's complaint in the Maryland Action, (d) who seeks to delay, for years, any resolution of the inventorship issues raised in this action while EntreMed pursues purported antitrust claims against Celgene, and above all, (e) who has been less than candid with this Court.

## ARGUMENT

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Accord Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "For the purposes of a motion to dismiss, the material allegations of the complaint are taken as admitted . . . [a]nd, the complaint is to be liberally construed in favor of plaintiff." Jenkins v. McKeithen, 395 U.S. 411, 421 (1969); Hishon, 467 U.S. at 73.

Where standing is challenged at the pleadings stage, a court must "accept as true all material allegations of the complaint, and construe the complaint in favor of the complaining party." Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 109 (1979) (quoting Warth v. Seldin, 422 U.S. 490, 501 (1975)). See Bristol-Myers Squibb Co. v. Shalala, 91 F.3d 1493, 1499 (D.C. Cir. 1996) ("[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice to establish standing, for on a motion to dismiss we presume that general allegations

embrace those specific facts that are necessary to support the claim.") (citation and internal quotation marks omitted).

Measured against these standards, EntreMed's motion clearly must be denied.

## I. THE COURT HAS SUBJECT MATTER JURISDICTION TO HEAR THIS ACTION.

As a patent owner whose exclusive right to an invention is about to be nullified by the imminent issuance to its commercial rival of patents for the same invention, Celgene undeniably has standing to seek judicial review. There is nothing "hypothetical" or "abstract" about the imminent issuance of these patents or the damage that Celgene will suffer: absent relief from this Court, defendant Rogan will "nullify plaintiff's legal and economic rights under the '471 patent and give over to EntreMed the benefits of plaintiff's patented inventions" (Complaint ¶ 29).

The requisites for a "justiciable controversy" cognizable in federal courts are as follows:

(1) that the plaintiff have suffered an "injury in fact" -- an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of -- the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Bennett v. Spear, 520 U.S. 154, 167 (1997) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

Here, the complaint unquestionably alleges a justiciable controversy, to wit:

Absent injunctive relief from this Court, defendant Rogan threatens imminently to issue a United States patent purporting to grant defendant EntreMed or its assignor a purported legal right to exclude plaintiff from using its own patented

method for the treatment of oncogenic or cancerous conditions or selling products for carrying out that patented method (Complaint ¶ 28, see also ¶ 54).

The conduct of defendant[ ] threatens to cause immediate and irreparable harm to plaintiff for which there is no adequate remedy at law. Celgene has made substantial investment in testing and ongoing development of promising a cancer treatment utilizing the method and chemical composition disclosed and claimed in the '471 patent. EntreMed is a direct competitor of Celgene. Issuance of a patent on the '344 application in its current form would effectively nullify plaintiff's legal and economic rights under the '471 patent and give over to EntreMed the benefits of plaintiff's patented inventions (Complaint ¶ 29, see also ¶ 55).

Defendants' actions threaten to cause irreparable harm to plaintiff's ability to secure the continued support and collaboration of clinical investigators for further testing of the inventions of plaintiff's '471 patent. Defendant's actions also threaten to cause damage to plaintiff's business, goodwill and relations with investors by impairing plaintiff's ability to develop and market the claimed inventions of its issued '471 patent. These imminently threatened injuries cannot be adequately or accurately quantified in monetary terms (Complaint ¶ 30, see also ¶ 56).

The complaint identifies a controversy between Celgene and EntreMed -- rival claimants to the same invention -- that is "definite and concrete, touching the legal relations of parties having adverse legal interests," and that admits of "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-41 (1937). And in seeking to prevent defendant Rogan's threatened issuance of the interfering patents being prosecuted by EntreMed, the complaint "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts." Id. at 242.

Based on the allegations of the complaint, all three requirements for constitutional standing exist. The threatened injury identified by Celgene -- issuance of patents to its commercial rival that interfere with patents that Celgene already owns -- constitutes an "injury in

NY2 - 1375224.1

fact" that is concrete, particularized, and actual or imminent. Gladstone, 441 U.S. at 99

(explaining that a plaintiff satisfies Article III by showing that he personally has suffered "some

actual or threatened injury" as a result of the conduct complained of).  As the Supreme Court

explained: "One does not have to await the consummation of threatened injury to obtain

preventive relief.  If the injury is certainly impending, that is enough."  Thomas v. Union Carbide

Agric. Prods. Co., 473 U.S. 568, 581 (1985).

> 35 U.S.C. § 291 provides:

> The owner of an interfering patent may have relief against the owner of another by
> civil action, and the court may adjudge the question of the validity of any of the
> interfering patents, in whole or in part.

By the above-quoted statute, the Congress has recognized that issuance of an "interfering"

patent constitutes a form of "injury" warranting the intervention of a federal court.  Under the

D.C. Circuit's decision in Monsanto Co. v. Kamp, 360 F.2d 499 (D.C. Cir. 1965), Celgene

clearly need not wait until its '471 Patent is actually nullified by the Patent Office before seeking

relief.  As in Monsanto, Celgene is entitled here to prevent the issuance of an interfering patent.

See Monsanto, 360 F.2d at 502 ("We therefore hold that, since the Commissioner of Patents has

issued a patent valid on its face, he is not free to take action adverse to the validity of that patent

while its validity is being litigated in the United States courts.").  The D.C. Circuit reasoned that

the existence of two patents covering the same invention would be a "contradiction to the whole

thesis of patent issuance."  Id. at 501.  It went without saying, in Monsanto, that the owner of an

issued patent had "standing" to seek and obtain preliminary injunctive relief against the Patent

Office's issuance of an "interfering" patent to another.

As the <u>Monsanto</u> decision also illustrates, Celgene's complaint sufficiently alleges that its claimed threatened injury is a direct, specific, and proximate result of Defendant Rogan's announced decision to issue the interfering patents.  That EntreMed is a direct competitor of Celgene (Complaint ¶¶ 29, 55) greatly magnifies the harm that will flow from the threatened issuance of the interfering patents in question.  Under what the D.C. Circuit has "termed the competitor standing doctrine . . . when a challenged agency action authorizes allegedly illegal transactions that will almost surely cause [a] petitioner to lose business, there is no need to wait for injury from specific transactions to claim standing." <u>Bristol-Myers Squibb</u>, 91 F.3d at 1497 (quoting <u>El Paso Natural Gas Co.</u> v. <u>FERC</u>, 50 F.3d 23, 27 (D.C. Cir. 1995)).  <u>See MD Pharm., Inc.</u> v. <u>Drug Enforcement Admin.</u>, 133 F.3d 8, 11 (D.C. Cir. 1998) (applying competitor standing doctrine and finding justiciable controversy).

Finally, Celgene's injuries will be redressed if the requested relief is granted.  If the Court enjoins defendant Rogan from issuing the threatened interfering patents, Celgene will continue to enjoy its rights as the true and rightful owner of the invention claimed in the '471 patent. <u>See</u> Complaint ¶¶ 5-6, 32.  This is not a case where the asserted harm flows indirectly from the challenged agency action and depends on "independent action of some third party not before the Court." <u>Simon</u> v. <u>Eastern Ky. Welfare Rights Org.</u>, 426 U.S. 26, 42 (1976).  On the contrary, the threatened harm flows directly from defendant Rogan's decision to issue interfering patents to Celgene's rival, and is eminently redressable precisely because it depends upon the official actions of defendant Rogan, a party to this litigation over whom the Court has jurisdiction.

EntreMed argues that if this Court enjoins Director Rogan from issuing the interfering patents, EntreMed "could seek judicial review of that decision pursuant to the Administrative

NY2 - 1375224.1

Procedure Act . . . ." (EntreMed Mem. at 6). This contention is frivolous. EntreMed is a named party to this action and will be bound by the Court's disposition of this action. EntreMed may of course appeal this Court's rulings, but a court is not an "agency" whose actions are reviewable under the Administrative Procedure Act.

EntreMed inappropriately argues that the existence of the EntreMed '291 Patent, claiming "the use of 3-amino thalidomide", somehow mitigates the harm to Celgene that will flow from the threatened issuance of interfering patents from the applications before this Court (EntreMed Mem. at 4). These arguments are impermissible in the present context of a Rule 12 motion to dismiss, wherein the factual allegations of Celgene's Complaint must be taken as true. See Hishon, 467 U.S. at 73; Jenkins, 395 U.S. at 421. These arguments are, moreover, factually flawed, because the claims of the '291 Patent are not directed to the same invention as any claims of Celgene's '471 Patent (see Bretscher Decl. ¶ 3 & Ex. 2 at ¶ 67), and because the Patent Office has previously ruled that the '291 Patent does not disclose the claimed inventions of the '471 Patent.

In further arguing that Celgene does not have standing, EntreMed inappropriately relies on a line of cases where putative infringers were found not to have standing to challenge the issuance of a patent (EntreMed Mem. at 4-7, 9-10) (citing Syntex (USA) Inc. v. United States Patent & Trademark Office, 882 F.2d 1570 (Fed. Cir. 1989); Hallmark Cards, Inc. v. Lehman, 959 F. Supp. 539 (D.D.C. 1997); Hitachi Metals, Ltd. v. Quigg, 776 F. Supp. 3 (D.D.C. 1991)). The issues raised in these cases, however, are fundamentally different than the one posed here.

The "injury"complained of by the plaintiffs in the cited cases consisted of nothing more than a fear of a future suit for infringement which might or might occur, or which might occur in

unexpected ways. <u>Cf.</u> <u>Hitachi</u>, 776 F. Supp. at 12 ("Hitachi's claims as a third-party protestor, as

a competitor, and as a potential target of an infringement suit do not fall within 'the zone of

interests' protected by the relevant statute . . . ."). In sharp contrast, Celgene here sues as the

owner of a United States patent covering the very same inventions on which defendant Rogan

has announced his intention to issue "interfering" patents to EntreMed's licensor. Unlike a mere

putative infringer, Celgene faces the imminent nullification of vested legal interests, namely,

Celgene's subsisting legal and economic rights under the '471 Patent (Complaint ¶¶ 28-29, 54-

55). That is plainly an interest whose protection is sufficient to invoke the jurisdiction of this

Court.

## II. <u>THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT ENTREMED.</u>

Fed. R. Civ. P. 4(k) provides, in relevant part:

(1) Service of a summons . . . is effective to establish jurisdiction over the person
of a defendant . . .

(B) who is a party joined under . . . Rule 19 and is served at a place within
a judicial district of the United States and not more than 100 miles from
the place from which the summons issues . . . .

A summons issued by this Court was served upon EntreMed at its headquarters in

Rockville, Maryland, within 100 miles of Washington, D.C. And there can be no doubt that

EntreMed is a party "properly joined under Rule 19." EntreMed is the exclusive licensee of the

'344 and '391 applications whose allowance is challenged in this action (<u>see</u> Bretscher Decl. ¶ 2

& Ex. 1 at ¶ 57), and controls prosecution of the '344 and '391 application (Complaint ¶¶ 8-11,

33-36). A judgment invalidating those applications clearly would, as a practical matter, impair or

impede EntreMed's ability to protect its interest as exclusive licensee and beneficial owner of the

-13-

NY2 - 1375224.1

'344 and '391 applications.  See Fed. R. Civ. P. 19(a)(2)(i).  Accordingly, EntreMed was

properly joined under Rule 19 and is subject to personal jurisdiction under Rule 4(k)(1)(B).

## III.  <u>VENUE IS PROPER IN THIS DISTRICT.</u>

28 U.S.C. §§ 1391 (b) and (c) provide in relevant part:

(b)  A civil action wherein jurisdiction is not founded solely on diversity of
citizenship may, except as otherwise provided by law, be brought only in (1) a
judicial district where any defendant resides, if all defendants reside in the same
State, (2) a judicial district in which a substantial part of the events or omissions
giving rise to the claim occurred . . . or (3) a judicial district in which any
defendant may be found, if there is no district in which the action may otherwise
be brought.

(c)  For purposes of venue under this chapter, a defendant that is a corporation
shall be deemed to reside in any judicial district in which it is subject to personal
jurisdiction at the time the action is commenced.

As shown in Part II, above, the Court has personal jurisdiction over EntreMed.  EntreMed

accordingly "resides" within this judicial district for purposes of § 1391(b)(1).  <u>GTE New Media</u>

<u>Servs., Inc.</u> v. <u>Ameritech Corp.</u>, 21 F. Supp. 2d 27, 39 (D.D.C. 1998) ("venue is proper over a

corporate defendant wherever it is subject to personal jurisdiction at the time the action is

commenced").  See <u>VE Holding Corp.</u> v. <u>Johnson Gas Appliance Co.</u>, 917 F.2d 1574, 1584 (Fed.

Cir. 1990) (same).

EntreMed contends -- without citing authority -- that venue is improper in the District of

Columbia because defendant Rogan – an Under Secretary of Commerce – supposedly does not

"reside" in this district (EntreMed Mem. at 17).  The contention is baseless.  As an Under

Secretary of Commerce whose official address is "Washington, D.C. 20231", defendant Rogan

unquestionably "resides" in the District of Columbia for venue purpose.  "For purposes of venue,

all federal defendants reside in Washington, D.C." <u>Williams</u> v. <u>United States</u>, No. C-01-0024

NY2 - 1375224.1

EDL, 2001 WL 1352885 (N.D. Cal. Oct 23, 2001), at *1 (copy provided as Bretscher Decl., Ex. 4); accord Nestor v. Hershey, 425 F.2d 504, 521-22 (D.C. Cir. 1969) (holding that "as a public official [General Hershey] 'resides' in the District of Columbia" and reversing dismissal for want of venue). EntreMed itself relies on cases in which APA actions were brought in the District of Columbia to review actions by the Commissioner (now known as the Director) of the Patent Office, in which the appropriateness of venue was never questioned.[4]

Venue is also proper under § 1391(b)(2) because a substantial part of the events giving rise to Celgene's claim occurred in this District. Patent Office regulations require all patent correspondence to be addressed to the Patent Office's official mailing address in the District of Columbia. See 37 C.F.R. § 1.1(a)(1)("All correspondence concerning patent matters processed by organizations reporting to the Assistant Commissioner for Patents should be addressed to 'Assistant Commissioner for Patents, Washington, DC 20231.'"). The papers by which EntreMed procured the agency actions complained of in this litigation were in fact mailed to that address. See Complaint Ex. C. Accordingly, venue with respect to EntreMed is also proper under § 1391(b)(2).

---

[4]    See EntreMed Mem. at 2 (citing Godtfredson v. Banner, 503 F. Supp. 642 (D.D.C. 1980)); id. at 4 (citing Hitachi Metals, Ltd. v. Quigg, 776 F. Supp. 3 (D.D.C. 1991)); id. at 5 (citing Hallmark Cards, Inc. v. Lehman, 959 F. Supp. 539 (D.D.C. 1997)). The Patent Office has itself sought transfer of an APA action from another district to the District of Columbia, arguing that this Court has a special role in reviewing Patent Office decisions. Standard Havens, Inc. v. Manbeck, 762 F. Supp. 1349, 1351 (W.D. Mo. 1991) (granting transfer under 28 U.S.C. § 1406(a)); see also 35 U.S.C. §§ 145 (unsuccessful applicant for patent may have remedy against the Director by civil action in the District of Columbia), 146, 291 (party in interest may have relief against interfering application or patent in the District of Columbia where rival claimants reside in a plurality of districts not embraced within the same state).

## IV.  THE COMPLAINT STATES AN ACTIONABLE
##      CLAIM ARISING UNDER 5 U.S.C. § 702.

Section 10 of the Administrative Procedure Act, 5 U.S.C. § 702, provides in part:

A person suffering legal wrong because of agency action, or adversely affected or
aggrieved by agency action within the meaning of a relevant statute, is entitled to
judicial review thereof.

"[P]ersons ha[ve] standing to obtain judicial review of federal agency action under § 10
of the APA where they ha[ve] alleged that the challenged action had caused them 'injury in fact,'
and where the alleged injury was to an interest 'arguably within the zone of interests to be
protected or regulated' by the statutes that the agencies were claimed to have violated." Sierra
Club v. Morton, 405 U.S. 727, 733 (1972) (quoting Association of Data Processing Service
Orgs., Inc. v. Camp, 397 U.S. 150, 153 (1970)).  The Supreme Court has repeatedly construed
the APA "not grudgingly but as serving a broadly remedial purpose." Camp, 397 U.S. at 156.

"'Injury in fact' reflects the statutory requirement that a person be 'adversely affected' or
'aggrieved,' and it serves to distinguish a person with a direct stake in the outcome of a litigation
– even though small – from a person with a mere interest in the problem." United States v.
SCRAP, 412 U.S. 669, 689 n.14 (1973).  Here Celgene sues to prevent imminent and irreparable
harm to an issued patent held by Celgene, the identical form of injury found sufficient to support
an award of preliminary injunctive relief in Monsanto, 360 F.2d at 501.  For the reasons set forth
in Part I, supra, Celgene's complaint in this action unquestionably alleges "injury" sufficient to
invoke 5 U.S.C. § 702.

It is equally clear that Celgene, as the owner of an issued United States patent, falls within
the "zone of interests" which the Patent Act exists to regulate and protect.  See id. at 501-02.

-16-

"The zone of interests adequate to sustain judicial review is particularly broad in suits to compel federal agency compliance with law, since Congress itself has pared back traditional prudential limitations . . . by the Administrative Procedure Act, which affords review to any person 'adversely affected or aggrieved by [federal] agency action within the meaning of a relevant statute,' 5 U.S.C. § 702 . . . . " FAIC Securities, Inc. v. United States, 768 F.2d 352, 357 (D.C. Cir. 1985) (Scalia, J.).

"[T]he zone of interests test is generous and relatively undemanding." Animal Legal Defense Fund, Inc. v. Glickman, 154 F.3d 426, 444 (D.C. Cir. 1998) (en banc). The test focuses "on those who in practice can be expected to police the interests that the statute protects." Id. "[W]here, as here, a statutory provision reflects a legislative purpose to protect a competitive interest, the protected competitor has standing to require compliance with that provision." Bristol-Myers Squibb, 91 F.3d at 1497; see MD Pharm., 133 F.3d at 12. "Certainly he who is 'likely to be financially' injured . . . may be a reliable private attorney general to litigate the issues of the public interest in the present case." Camp, 397 U.S. at 154 (quoting FCC v. Sanders Bros. Radio Station, 309 U.S. 470, 477 (1940)).

Despite the generous review provisions of the APA, EntreMed advances two arguments in support of its contention that Celgene has failed to state a claim upon which relief may be granted: (1) that defendant Rogan's decision to issue patents on EntreMed's '344 and '391 applications supposedly is not "final" for purposes of 5 U.S.C. § 704; and (2) that judicial review of defendant Rogan's decision is precluded by statute (EntreMed Mem. at 7-8, 18-20). As set forth below, both arguments are meritless.

A.  Defendant Rogan's Decision
    Constitutes Final Agency Action

For purposes of the present motion, Celgene's allegation that defendant Rogan "threatens imminently to issue" the subject applications (Complaint ¶¶ 28, 54) must be taken as true.  See Hishon, 467 U.S. at 73; Jenkins, 395 U.S. at 421; Oconus DOD Employee Rotation Action Group v. Cohen, 140 F. Supp. 2d 37, 43 (D.D.C. 2001) ("[T]his Court ruled that for purposes of Defendant's Motion to Dismiss, where Plaintiff's allegations must be taken as true, Draft Subchapter 1230 was final agency action.  In particular, the Court accepted as true representations that . . . [the agency] had no plans to change it.").  The Patent Office has failed to respond to requests by Celgene for assurances that it would not issue interfering patents pending determination of this action (Bretscher Decl. ¶ 4 & Ex. 3).

This is not a case in which the plaintiff's claim "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  Texas v. United States, 523 U.S. 296, 300 (1998) (quoting Union Carbide, 473 U.S. at 580-81 (quoting 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3532 at 112 (1984))).  Nor is this a case in which judicial intervention would "inappropriately interfere with further administrative action." or in which an agency is expected to engage in "further factual development of the issues presented." Ohio Forestry Ass'n v. Sierra Club, 523 U.S. 726, 733 (1998).

Quite the contrary, defendant Rogan has formally concluded his examination of the challenged '344 and '391 applications.  37 C.F.R. §1.313(b) provides:

> Once the issue fee has been paid, the Office will not withdraw the application
> from issue at its own initiative for any reason except: (1) A mistake on the part of
> the Office; (2) A violation of § 1.56 or illegality in the application; (3)
> Unpatentability of one or more claims; or (4) For interference.

NY2 - 1375224.1

Public records of the Patent Office indicate that EntreMed has paid the "issue fee" in both of the challenged applications.  EntreMed has not even argued that the Patent Office has any plans to reconsider or retract its decision to "allow" those applications to issue as interfering patents.  The vigor with which EntreMed has opposed this action, indeed, is itself evidence that EntreMed expects the challenged applications to issue as interfering patents in the near future. Under Monsanto, Celgene is entitled to prevent the Patent Office from carrying through on its stated intent to issue interfering patents on inventions already patented under Celgene's issued '471 Patent.   "One does not have to await the consummation of threatened injury to obtain preventive relief."  Union Carbide,  473 U.S. at 581.

EntreMed's assertion, "[b]ecause the Commissioner may still withdraw the '344 and '391 patent applications from issue, the agency action is not final" (EntreMed Mem. at 20), proves far too much.  Agencies can always change their minds; and if the bare possibility of an agency's reversing itself were sufficient to preclude judicial review, review could be evaded forever.  See Sabella v. United States, 863 F. Supp. 1, 4 (D.D.C. 1994) ("Even if the agency claims to be in the process of rulemaking the Court must be aware that the agency always retains the power to change its policies.  If the possibility of unforseen amendments were sufficient to render an otherwise fit challenge unripe, review could be deferred indefinitely.") (citation omitted).

As a general matter, agency action is "final" when it "mark[s] the 'consummation' of the agency's decisionmaking process" and is action "by which rights or obligations have been determined, or from which legal consequences will flow."  Bennett, 520 U.S. at 177-78 (citations

and internal quotation marks omitted).[5]  Defendant Rogan's decision to issue Notices of

Allowances on EntreMed's applications was, in fact, the "consummation" of the Patent Office's

decisionmaking process.  35 U.S.C. §151 states that "[i]f it appears that applicant is entitled to a

patent under the law, a written notice of allowance of the application shall be given or mailed to

the applicant."  Every Notice of Allowance issued by the Patent Office states that "THE

APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR

ISSUANCE AS A PATENT.  PROSECUTION ON THE MERITS IS CLOSED."

Defendant Rogan's decision to "allow" EntreMed's applications also is an act "by which

rights or obligations have been determined, or from which legal consequences will flow."

Bennett, 520 U.S. at 178.  That the Patent Office has not yet actually performed the ministerial

task of printing and publishing the "allowed" applications as patents renders defendant Rogan's

challenged decisions no less "final" for purposes of judicial review.  Cf. Budinich v. Becton

Dickinson & Co., 486 U.S. 196, 199 (1988) (in the context of appeals under 28 U.S.C. §1291, "A

'final decision' generally is one which ends the litigation on the merits and leaves nothing for the

court to do but execute the judgment.") (quoting Catlin v. United States, 324 U.S. 229, 233

(1945)).

In Monsanto, the D.C. Circuit not only entertained a patent owner's suit to enjoin the

Patent Office from issuing an interfering patent, but held that the plaintiff was entitled to a

preliminary injunction restraining the Patent Office from issuing an interfering patent while the

_____

[5]        EntreMed cites to an older case, FTC v. Standard Oil Co. of Cal., 449 U.S. 232
(1980), for the standard of finality (EntreMed Mem. at 19).  But more recent cases in this
jurisdiction have applied the Bennett standard.  See e.g., Arizona v. Shalala, 121 F. Supp. 2d 40,
48 (D.D.C. 2000); Cobell v. Babbitt, 30 F. Supp. 2d 24, 33-34 (D.D.C. 1998).

NY2 - 1375224.1

plaintiff's issued patent remained outstanding.  Monsanto, 360 F.2d at 501-02.  Clearly, the D.C.

Circuit in Monsanto was not concerned that the Patent Office "could" change its mind and

suddenly decide not to issue an interfering patent.

   B.  Review of Defendant Rogan's
       Decision Is Not Precluded by Statute

      EntreMed's alternative argument, that judicial review of defendant Rogan's challenged

actions is supposedly "precluded by statute," 5 U.S.C. § 701(a)(1), is equally baseless.  "[O]nly

upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the

courts restrict access to judicial review."  Abbott Labs. v. Gardner, 387 U.S. 136, 141 (1967).

"To preclude judicial review under this bill a statute, if not specific in withholding such review,

must upon its face give clear and convincing evidence of an intent to withhold it."  Id. (citing

H.R. Rep. No. 1980, 79th Cong., 2d Sess., 41 (1946), U.S. Code Cong. Serv. 1946, p. 1195).

"The mere failure to provide specifically by statute for judicial review is certainly no evidence of

intent to withhold review."  Id.

      Given such a high standard, EntreMed's argument that some unidentified "statutes"

supposedly "preclude judicial review" in this case is plainly insufficient to strip this Court of

review authority.  EntreMed has not cited to any statute precluding review of defendant Rogan's

decision to "allow" the '344 and '391 applications to issue as patents in their current form.

EntreMed cites cases such as Hitachi and its statement that "the comprehensive scheme Congress

established to govern patent grants reveals Congress' intent to preclude judicial review of PTO

examination decisions at the behest of third parties protesting the issue or reissue of a patent"

(EntreMed Mem. at 9) (citing Hitachi, 776 F. Supp. at 7).  But as set forth in Part I, supra,

NY2 - 1375224.1

whether a "protester" can seek judicial review of a Patent Office decision to issue a patent, in a fundamentally different question from whether a patent <u>owner</u> can seek review of an announced decision to issue an <u>interfering</u> patent.

Far from precluding judicial review of Patent Office decisions to issue interfering patents, Congress expressly provided, in 35 U.S.C. § 291, that an owner of an interfering patent may have relief against another. <u>Monsanto</u> expressly rejects EntreMed's apparent argument that Celgene must wait and suffer the very injury this action was brought to prevent – issuance of invalid interfering patents – before seeking relief. 360 F.2d at 501-02.

As the D.C. Circuit observed in <u>Monsanto</u>, it is one thing for an interfering patent to issue by "accident." 360 F.2d at 501. 35 U.S.C. § 291 provides a mechanism for correcting such "accidents" after the fact. It is quite another thing for the Patent Office to issue interfering patents <u>knowingly</u> and <u>deliberately</u> and in derogation of a previously-issued patent. That is what the complaint alleges here. EntreMed has identified nothing remotely approaching "clear and convincing evidence" that Congress intended to preclude judicial review of a Patent Office decision to issue an interfering patent, in a civil action brought by the owner of the patent whose rights are being violated.

NY2 - 1375224.1

## CONCLUSION

For the reasons set forth above, defendant EntreMed's motion to dismiss should be denied in all respects.

Dated:  December 2, 2002

PENNIE & EDMONDS LLP

By _Carl P. Bretscher_
   James W. Dabney
   Stephen S. Rabinowitz
   Carl P. Bretscher (#463985)
   Max Bachrach (#477267)

1667 K Street, N.W., Suite 1000
Washington, D.C. 2006
(202) 496-4400

Attorneys for Plaintiff
Celgene Corporation

NY2 - 1375224.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing MEMORANDUM IN OPPOSITION TO DEFENDANT ENTREMED, INC.'S MOTION TO DISMISS was served on this 2nd day of December, 2002, upon the following persons by United States mail, prepaid postage:

Stanley M. Gorinson
Stephen E. Baskin
KILPATRICK STOCKTON LLP
607 14th Street, N.W. Suite 900
Washington, D.C. 20005-2018
Telephone Number: 202-508-5800
Fax Number: 202-508-5858
E-mail addresses: sgorinson@KilpatrickStockton.com
sbaskin@KilpatrickStockton.com

Anthony B. Askew
Robert E. Richards
Katrina M. Quicker
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309-4530
E-mail address:taskew@KilpatrickStockton.com

*Attorneys for Defendant Entremed, Inc.*

David J. Ball
Assistant United States Attorney
Judiciary Center Building, Room 10-114
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone Number: 202-307-0299
E-mail address: david.ball@usdoj.gov

*Attorney for James E. Rogan, Director*

DC1 - 336641.1