UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CELGENE CORPORATION,              )<br>                                                              )<br>              Plaintiff,                            )<br>                                                              )<br>      v.                                                   )<br>                                                              )<br>JAMES E. ROGAN, Under Secretary of  )<br>     Commerce for Intellectual Property and )<br>     Director of the U.S. Patent and             )<br>     Trademark Office,                              )<br>                                                              )<br>              and                                       )<br>                                                              )<br>ENTREMED, INC.,[1]                             )<br>                                                              )<br>              Defendants.                          )<br>_____ ) | Civil Action No. 02-2277 (RBW) |

**REPLY IN SUPPORT OF FEDERAL DEFENDANT'S OPPOSED MOTION FOR AN 60-DAY STAY OF ALL PROCEEDINGS IN VIEW OF PLAINTIFF'S SETTLEMENT WITH CO-DEFENDANT AND PLAINTIFF'S ABILITY TO RESOLVE ALL REMAINING CLAIMS WITHOUT THE INTERVENTION OF THE COURT**

Plaintiff has filed an opposition with two basic arguments.  First, plaintiff suggests that it does not really have the power to get what it wants without the intervention of the Court.  As shown in Part I below, plaintiff's own actions, which plaintiff does not deny, show that it is wrong.  Second, plaintiff suggests that federal defendant is trying to avoid prosecuting this lawsuit because defendant is afraid that it may be held liable for attorneys fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2812(d).  As shown in Part II below, not only is this wrong, but the very notion that plaintiff, a highly-capitalized corporation, could even qualify for the EAJA program, which is limited by statute to less-well-off litigants, is implausible at best.

---

[1] Plaintiff Celgene and co-defendant EntreMed filed a Stipulation of Dismissal on January 2, 2003, leaving federal defendant as the only defendant in this case.

The bottom line is that this Court, and federal defendant, should not waste any time or effort on this litigation where plaintiff, by means of the settlement which gave it control over co-defendant EntreMed's patent applications, now has the power to get what it wants whenever plaintiff chooses to exercise it. The Court should grant the requested stay until March 3, 2003, to give plaintiff time to do so. If plaintiff has not done so by that time, then federal defendant will file a motion to dismiss, and demonstrate just how meritless plaintiff's arguments really are.

**I.     PLAINTIFF HAS THE POWER TO GET WHAT IT WANTS WITHOUT THE INTERVENTION OF THE COURT**

Plaintiff's opposition is as interesting for what it does not say as for what it says. Plaintiff does not deny that, as reported in the Washington Post, it acquired rights to the EntreMed patent applications at issue when it settled with EntreMed. See Def.'s Mot. at 2; "EntreMed, Rival to Announce Funding Deal," Washington Post, Jan. 1, 2003 (available at <www.washingtonpost.com/wp-dyn/articles/A64224-2003Jan1.html>).[2] Nor does plaintiff deny that it exercised those rights on January 2, 2003, when it directed EntreMed to petition to withdraw and expressly abandon the application scheduled to issue on January 14. See Def.'s Mot. at 2-3. Finally, plaintiff does not deny that it also has the power to direct EntreMed to petition to withdraw and expressly abandon any other of the patent applications that it does not want to issue. See Def.'s Mot. at 3.

---

[2] Federal defendant has not been able to independently confirm this because, as previously reported, plaintiff refuses to provide a copy of its settlement agreement with EntreMed for federal defendant to review. See Def.'s Mot. at 2 & n.2. However, plaintiff's silence is tantamount to a concession that federal defendant's understanding is correct. To the extent there is any lingering doubt, the Court should order plaintiff to produce the settlement agreement. Defendant respectfully suggests that this is an appropriate subject for the hearing to be held on January 24, 2003.

Plaintiff appears to claim, in a footnote, that despite its power to direct EntreMed to withdraw and abandon the patent applications, it does not have the power to force the USPTO to accept the withdrawal. Pl.'s Opp. at 4 n.9. This is a red herring. Plaintiff concedes in the very same footnote that the other patent application at issue (the "'391 application") has been withdrawn from issue and EntreMed has the power (at the direction of plaintiff) to abandon it. Id.[3] Plaintiff goes on to mention another application that the USPTO recently allowed (the "'539 application"), but that is not one of the applications addressed in plaintiff's complaint in this lawsuit; and even if it were properly before the Court, plaintiff is free to direct EntreMed to petition to withdraw and abandon that application as well. The regulations expressly countenance such a petition, see 37 C.F.R. § 1.313(c)(3), and plaintiff has no reason to believe that the USPTO will not grant it.[4]

Thus, plaintiff has the power to get what it really wants – to prevent the EntreMed applications as they presently stand from issuing as patents – without taking any of the Court's time. Of course, plaintiff states that it also wants a declaratory judgment that the USPTO should not have issued notices of allowance for the patents in the first place, but the only reason plaintiff

---

[3] There is no merit to plaintiff's assertion that the USPTO's withdrawal of the '391 application should be viewed as "corrective action" showing that plaintiff is right. See Pl.'s Opp. at 4. As plaintiff should be well aware, now that it controls EntreMed's prosecution of this patent application, the USPTO acted because it determined the claims of the application were invalid for "obviousness," see 35 U.S.C. § 103(a). The USPTO's action was necessary and proper in furtherance of its mission to issue valid patents. See Blacklight Power, Inc. v. Rogan, 295 F.3d 1269, 1273-74 (Fed. Cir. 2002).

[4] Indeed, as plaintiff concedes, the USPTO acted "instanter" (plaintiff's term) to grant the previous petition, to withdraw and abandon the "'344 application." See Pl.'s Opp. at 3. Plaintiff having succeeded in having the '344 application withdrawn, there is no reason to suppose it cannot do (or have EntreMed do) the same with respect to any others of the applications it is concerned about.

gives is that it would support plaintiff's attempt to recover EAJA attorneys fees for filing this suit.  See Pl.'s Opp. at 3.  But as explained below, the EAJA argument appears to be frivolous.

## II. FEDERAL DEFENDANT IS NOT TRYING TO AVOID PAYING EAJA FEES, BUT RATHER IS TRYING TO AVOID WASTING THE COURT'S AND ITS OWN TIME AND EFFORT

Plaintiff accuses federal defendant of filing the present stay motion as "a thinly-disguised effort to prevent Celgene from attaining 'prevailing party' status in this action for purposes of 28 U.S.C. § 2412(d) [the EAJA]."  Pl.' Opp. at 4.  Nothing could be farther from the truth.  As explained below, federal defendant has a number of reasons for believing it will win this case if it comes to that, and thus its position is more than "substantially justified" under § 2412(d)(1)(A) of the EAJA.  But the more glaring problem with plaintiff's accusation is that plaintiff appears to have no foundation whatsoever for making it, because plaintiff is not covered by the EAJA in any event.

The purpose of the EAJA is to ensure that parties with limited resources are able to litigate effectively against the government.  See Commissioner v. Jean, 496 U.S. 154, 164-65 (1990).  Thus, the EAJA expressly provides that a for-profit corporation like plaintiff cannot be a "party" under the EAJA – and thus cannot be a "prevailing party" – unless its net worth "did not exceed $7,000,000 at the time the civil action was filed."  28 U.S.C. § 2412(d)(2)(B)(ii).

It is highly unlikely that plaintiff can satisfy this requirement.  Plaintiff's market capitalization, as of yesterday, was **$1.8 Billion**.  See <http://finance.yahoo.com/q?s=celg&d=t>.  According to publicly-available financial data, as of September 30, 2002 (about six weeks before plaintiff filed this lawsuit), plaintiff had net tangible assets of **$322 Million**.  See <http://biz.yahoo.com/fin/l/c/celg_qb.html>.  And as reported in the Washington Post article

cited above, plaintiff had sufficient resources to pay co-defendant EntreMed **$27 Million** to settle that part of this case.

In view of plaintiff's immense resources, it is difficult to imagine that plaintiff would really try to seek fees under the EAJA. And this eliminates the only justification plaintiff has attempted for its claim that it still needs a declaratory judgment now that it has the control over EntreMed's intellectual property that will allow it to achieve its goals for this litigation without the further involvement of the Court. See Pl.'s Opp. at 3-4.

Finally, to dispel any lingering doubt about whether federal defendant is really afraid to prosecute this lawsuit, defendant offers the following highly abbreviated list of reasons why it expects to win if it comes to that. First, there is no justiciable case or controversy because plaintiff has the power to get what it wants without the intervention of the Court. Second, this Court lacks jurisdiction to hear plaintiff's complaint about the prosecution of EntreMed's patent applications, because "[a] third party has no right to intervene in the prosecution of a particular patent application to prevent issue of an allegedly invalid patent." Animal Legal Defense Fund v. Quigg, 932 F.2d 920, 930 (Fed. Cir. 1991).[5] And third, this is not the proper venue under the 1999 amendments to the USPTO's enabling legislation, 35 U.S.C. § 1. See, e.g., Boundy v. USPTO, Civil Action No. 01-879 (CKK) (D.D.C. Oct. 10, 2002) (previously supplied to the Court by EntreMed in support of its motion to dismiss).

---

[5] This is another reason why plaintiff could not succeed on an EAJA claim, in that the EAJA requires the Court to have jurisdiction. See 28 U.S.C. § 2812(d)(1)(A). Defendant also notes for the record that plaintiff has engaged in selective quotation from the old case of Monsanto Co. v. Kemp, 360 F.2d 499 (D.C. Cir. 1965), and that case does not support plaintiff's position. See Pl.'s Opp. at 1.

To repeat:  Federal defendant is seeking a stay not because it is trying to hide from this lawsuit, but because it is crystal clear that this lawsuit is a waste of the Court's and defendant's time and effort.

## CONCLUSION

The Court should stay all proceedings in this case until March 3, 2003.

Pursuant to this Court's practice in ECF cases, no certificate of service is attached, but will be provided immediately upon request.  Because there will be a hearing tomorrow, January 24, defense counsel is also faxing this to plaintiff's counsel's offices both here and in New York.

Respectfully submitted,

_____
ROSCOE C. HOWARD, JR.
D.C. Bar #246470
United States Attorney


_____
MARK E. NAGLE, D.C. Bar #416364
Assistant United States Attorney


_____
DAVID J. BALL, JR., D.C. Bar #460055
Assistant United States Attorney
Judiciary Center Building, Room 10-114
555 Fourth Street, N.W.
Washington, D.C.  20530
(202) 307-0299

January 23, 2003